**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| **CARLOS ALBERTO CAUDILLO, individually and as next friend to C.A.C.J. and K.C., ALEXIS ALEJANDRO CAUDILLO, CINTHIA CAUDILLO PIÑA, CARLA CAUDILLO, JUAN LUIS CAUDILLO, JOSE ROLANDO CAUDILLO, ANGEL ADELARDO CAUDILLO, OSMARA YOSELYN CAUDILLO, MARIA ELVA CAUDILLO, FRANCISCO J. MENDOZA SR., and ROBERTO CASTRO,** | § § § § § § § § § § § § § | **CIV. ACT. NO.** |
| *Plaintiffs,* | § § | |
| **v.** | § § | |
| **ADVANCE SERVICES, INC., CORTEVA AGRI-SCIENCE, INC., and PIONEER HI-BRED INTERNATIONAL, INC.,** | § § § § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § § | |

## PLAINTIFFS' COMPLAINT

### I.      INTRODUCTION

1.      Plaintiffs are migrant agricultural workers who bring this action against their former employers, Defendants Advance Services, Inc., Corteva Agriscience, Inc., and Pioneer Hi-Bred International, Inc. As alleged with greater particularity below, Defendants violated Plaintiffs' rights under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*, failed to pay Plaintiffs the federal minimum

wage, breached their contract with Plaintiffs, and broke the promises they made to Plaintiffs.

2.      Defendant Advance Services, through its employees Jorge Salinas and Lynne Wagner, recruited Plaintiffs at Plaintiff Juan Luis Caudillo's home in Texas. While recruiting Plaintiffs, Defendant Advance Services, acting as the agent of Defendants Corteva and Pioneer, made promises regarding the amount of work, the wages, and the benefits Plaintiffs would receive. Defendants made these promises, which they would later break, without providing required written disclosures, thereby harming Plaintiffs and violating the AWPA.

3.      Defendants made these promises expecting Plaintiffs to rely on them to travel to Georgia to work for Defendants.

4.      Reasonably relying on these promises, Plaintiffs traveled from their homes in Texas to Georgia.

5.      Plaintiffs spent a significant amount of money to travel across four states with their entire families, including young children.

6.      Ultimately, Defendants offered Plaintiffs fewer hours of work per week than promised and, despite having promised months of work, fired Plaintiffs after only a few weeks.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over Plaintiffs' claims under the AWPA and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

8.      Plaintiffs' federal claims are authorized and instituted pursuant to 29 U.S.C. § 1854(a) (AWPA) and 29 U.S.C. § 216(b) (FLSA).

9.      The Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

10.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' federal claims that they form part of the same controversy.

11.     Defendant Advance Services is registered to do business in Georgia, contracted with Defendant Pioneer to provide workers for Defendants Corteva and Pioneer's Georgia operations, and recruited Plaintiffs from Texas to work in Georgia. Accordingly, Defendant Advance Services has sufficient contacts within the Middle District of Georgia such that this Court has personal jurisdiction over it and maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice.

12.     Defendant Corteva is registered as a foreign corporation to do business in Georgia, has offices in Georgia, operates agricultural facilities in Pelham and Cairo, Georgia, and employed Plaintiffs in Georgia.

13.     Accordingly, Defendant Corteva has sufficient contacts within the Middle District of Georgia such that this Court has personal jurisdiction over it and maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice.

14.     Defendant Pioneer is registered as a foreign corporation to do business in Georgia and operates facilities in Pelham and Cairo, Georgia, and employed Plaintiffs in Georgia.

15.     Accordingly, Defendant Pioneer has sufficient contacts within the Middle District of Georgia such that this Court has personal jurisdiction over it and maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice.

16.     A substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in or around Grady County and, on information and belief, Mitchell County, Georgia, and

venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1854(a).

### III.    PARTIES

**A.    Plaintiffs**

17.    Plaintiffs are 13 migrant agricultural workers from Hidalgo County, Texas.

18.    Carlos Alberto Caudillo is the father of Alexis Alejandro Caudillo., C.A.C.J., K.C., Cinthia Caudillo Piña, and Carla Caudillo. They are residents of Edinburg, Texas.

19.    Juan Luis Caudillo and Maria Elva Caudillo are the parents of Jose Rolando Caudillo, Angel Adelardo Caudillo, and Osmara Yoselyn Caudillo. They are residents of Mission, Texas.

20.    When the acts and omissions complained of herein took place in 2019, Jose Rolando Caudillo, Osmara Yoselyn Caudillo, and Angel Adelardo Caudillo were minors.

21.    Carlos Alberto Caudillo, Juan Luis Caudillo, Maria Elva Caudillo, Francisco J. Mendoza, Sr., and Roberto Castro Sanchez primarily speak, read, and write Spanish.

22.    Roberto Castro Sanchez is a resident of Mission, Texas.

23.    Francisco J. Mendoza Sr. is a resident of Hidalgo, Texas.

24.    In 2019, Plaintiffs were engaged in "agricultural employment" for Defendants within the meaning of 29 U.S.C. § 1802(3) because they worked on a farm in the cultivation of corn, an agricultural commodity.

25.    In 2019, Plaintiffs were "migrant agricultural workers" within the meaning of 29 U.S.C. § 1802(8)(A) because they were employed in temporary and seasonal agricultural employment in Georgia and were therefore required to be absent from their permanent places of residence in Texas overnight.

26.   At all relevant times, Plaintiffs were employed by Defendants within the meaning of 29

U.S.C. §§ 203(e) & 203(g) because Defendants suffered or permitted Plaintiffs to work.

**B.   Defendants**

27.   Defendant Advance Services is a Nebraska corporation registered to do business in Texas

and Georgia with offices throughout the United States, including, in 2019, an office in

McAllen, Texas, from which Plaintiffs' recruitment was conducted.

28.   As further alleged below, Defendant Advance Services in 2019 was in the business of

recruiting, hiring, employing, furnishing, and transporting migrant agricultural workers,

including Plaintiffs, making it a farm labor contractor within the meaning of 29 U.S.C. §

1802(7).

29.   In 2019, Defendant Advance Services was registered as a farm labor contractor with the

U.S. Department of Labor as required by the AWPA.

30.   In 2019, Defendant Advance Services was an enterprise engaged in commerce or the

production of goods for commerce within the meaning of 29 U.S.C. § 203(s) because it

employed Plaintiffs to handle goods and materials, including corn, that traveled in

interstate commerce and because Defendant Advance Services had, on information and

belief, annual gross sales or business done of at least $500,000.

31.   Defendant Pioneer hired and paid Defendant Advance Services to recruit, hire and

provide workers to perform agricultural labor in Georgia. As a result, Defendant Advance

Services recruited, hired and provided the Plaintiffs to Defendant Pioneer to work in

Georgia.

32.   Defendant Advance Services was Plaintiffs' employer in 2019 within the meaning of 29

U.S.C. § 1802(5) and 29 U.S.C. § 203(d) because it acted in the interest of Corteva and

Pioneer in relation to Plaintiffs and because Corteva and Pioneer suffered or permitted Plaintiffs to work at their Georgia farm.

33. In 2019, Defendant Advance Services employed Plaintiffs within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g) because it suffered or permitted them to work at Defendants Corteva and Pioneer's Georgia seed corn operations when it, in its role as a staffing agency, among other things assigned Plaintiff to work at Defendants Corteva and Pioneer's Georgia seed corn operations.

34. Defendant Corteva is a registered Delaware corporation with its principal place of business in Iowa and operations throughout the world, including, in 2019, in the Middle District of Georgia.

35. Defendant Corteva is engaged in the business of researching, testing, breeding, and growing various agricultural products, including corn, soybeans, and sorghum.

36. In 2019, Defendant Corteva had nearly 14 billion dollars in gross annual sales made.

37. On information and belief, in 2019, Defendant Corteva owned or operated a farm or farms that grew seed corn in and around Cairo and Pelham, Georgia, and maintained permanent places of business in or around Cairo, Georgia.

38. In 2019, Defendant Corteva hired and employed migrant agricultural workers in its Georgia operations, including Plaintiffs.

39. Defendant Corteva was an agricultural employer within the meaning of 29 U.S.C. § 1802(2).

40. In 2019, Defendant Corteva was each plaintiff's employer within the meaning of 29 U.S.C. § 203(d) and (g) because it suffered or permitted them to work at its Georgia operations.

41.  In 2019, Defendant Corteva employed Plaintiffs within the meaning of 29 U.S.C. § 1802(5) because it suffered or permitted them to work at its Georgia operations.

42.  In 2019, Defendant Corteva was an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 203(s) because it employed Plaintiffs to handle goods and materials, including corn, that traveled interstate commerce.

43.  Defendant Pioneer is a registered Iowa corporation and has its headquarters in Johnston, Iowa. Defendant Pioneer has business operations nationwide, including, in 2019, in the Middle District of Georgia.

44.  Defendant Pioneer is a wholly-owned subsidiary of Corteva.

45.  Defendant Pioneer is engaged in the business of researching, testing, breeding, growing, and marketing various agricultural products such as crop seed, including corn, soybeans, and sorghum.

46.  In 2019, on information and belief, Defendant Pioneer owned and/or operated a farm or farms that grew seed-corn in and around Cairo and Pelham, Georgia, and maintained permanent places of business in Cairo and Pelham, Georgia.

47.  In 2019, Defendant Pioneer hired and employed migrant agricultural workers in its Georgia operations, including Plaintiffs.

48.  Defendant Pioneer was an agricultural employer within the meaning of 29 U.S.C. § 1802(2).

49.  In 2019, Defendant Pioneer was each Plaintiff's employer within the meaning of 29 U.S.C. § 203(d) and (g) because it suffered or permitted them to work at its Georgia operations.

7

50.     In 2019, Defendant Pioneer employed Plaintiffs within the meaning of 29 U.S.C. §
        1802(5) because it suffered or permitted them to work at its Georgia operations.

51.     In 2019, Defendant Pioneer was an enterprise engaged in commerce or the production of
        goods for commerce within the meaning of 29 U.S.C. § 203(s) because it employed
        Plaintiffs to handle goods and materials, including corn, that traveled in interstate
        commerce and because it had, on information and belief, an annual gross volume of sales
        made or business done of at least $500,000.

52.     Plaintiffs were dependent on Defendant Corteva as a matter of economic reality because
        Defendant Corteva supplied the funds for Plaintiffs' wages, owned or controlled the
        worksites, and provided the tools and equipment.

53.     Plaintiffs were dependent on Defendant Pioneer as a matter of economic reality because
        Defendant Pioneer supplied the funds for Plaintiffs' wages, owned or controlled the
        worksites, and provided the tools and equipment.

54.     Defendants Corteva and Pioneer are major agricultural businesses with decades of
        experience employing migrant agricultural workers.

# IV.   STATEMENT OF FACTS

## A.   Recruitment

55.   Defendant Pioneer contracted for Defendant Advance Services to recruit agricultural workers to travel to and work in the operations of Defendants Corteva and Pioneer in Mitchell and Grady Counties, Georgia.

56.   Working as a recruitment agent for Defendants Corteva and Pioneer, Defendant Advance Services recruited workers, including Plaintiffs, in South Texas because Texas (especially South Texas) is a major source of migrant agricultural labor.

57.   Sometime in late April or early May 2019, Defendant Advance Services mailed flyers to residents in South Texas advertising agricultural work.

58.   Plaintiff Juan Luis Caudillo received one such flyer and called the number on the flyer.

59.   Defendant Advance Services's employee, Jorge Salinas, then met Plaintiffs at Plaintiff Juan Luis Caudillo's home in Mission, TX.

60.   Defendant Advance Services' employee, Jorge Salinas, met with Plaintiffs multiple times at Plaintiff Juan Luis Caudillo's house.

61.   At these meetings, Jorge Salinas spoke to Plaintiffs in Spanish to describe the employment with Defendants.

62.   Defendant Advance Services was authorized to recruit workers for Defendants Corteva and Pioneer and was compensated for placing workers with Defendants Corteva and Pioneer.

63.   In 2019, Defendant Advance Services, for compensation, recruited Plaintiffs on behalf of Defendants Corteva and Pioneer.

64.     Defendant Advance Services acted with apparent authority and had actual authority to recruit workers on Defendants Corteva and Pioneer's behalf because Plaintiffs were in fact employed to perform work on a farm that was owned and/or operated by Defendants Corteva and Pioneer.

65.     Plaintiffs were supervised by and reported to employees of Defendants Corteva and Pioneer. Upon arriving in Georgia, Plaintiffs were informed that their supervisor was Jason Prothro, an employee of Defendants Corteva and Pioneer.

66.     To recruit Plaintiffs, Jorge Salinas made representations that Plaintiffs would be given a significant amount of work. He did this expecting Plaintiffs to rely on his promises to migrate from Texas to Georgia, sacrificing time, money, and other work opportunities.

67.     During these recruitment meetings in Texas, Jorge Salinas promised Plaintiffs at least six weeks of work for Defendants in Georgia.

68.     At these meetings, Jorge Salinas also promised Plaintiffs that after the work was done in Georgia, Defendants would employ Plaintiffs in Illinois for at least an additional six weeks.

69.     Defendants also promised Plaintiffs at these meetings in Texas that after the work was done in Illinois, Defendants would employ Plaintiffs in Nebraska for at least an additional six weeks.

70.     At these same recruitment meetings, Jorge Salinas promised Plaintiffs 70 hours of work, each, per week in Georgia, including overtime paid at one and one-half times their regular rate of pay for any hours each worked over 40 in a workweek.

71.   At these same recruitment meetings, Jorge Salinas promised Plaintiffs 70 hours of work, each, per week in Illinois, including overtime paid at one and one-half times their regular rate of pay for any hours each worked over 40 in a workweek.

72.   At these same recruitment meetings, Jorge Salinas promised Plaintiffs 70 hours of work, each, per week in Nebraska, including overtime paid at one and one-half times their regular rate of pay for any hours each worked over 40 in a workweek.

73.   At these same recruitment meetings, Jorge Salinas promised Plaintiffs that Defendant Advance Services would give each Plaintiff a $50 gas card to cover the cost of gas from South Texas to the worksite in Georgia.

74.   Defendant Advance Services further promised Plaintiff Carlos Alberto Caudillo free childcare for his three minor children who were too young to work.

75.   At no time during any of the recruitment meetings or before Plaintiffs left their homes in Texas to travel to Georgia did Defendants or any of their agents provide Plaintiffs with any written statement of the terms and conditions of employment.

76.   Defendants Corteva and Pioneer are major agricultural businesses with decades of experience employing migrant agricultural workers. They knew or should have known that they were required to provide Plaintiffs with written disclosures under the AWPA

77.   Plaintiffs had no reason to doubt that Jorge Salinas's promises would be fulfilled. Only Plaintiffs Juan Luis Caudillo and Maria Elva Caudillo had ever done the type of work they were recruited for, which was corn pollination. None of the Plaintiffs had experience working for Defendants or in corn pollination in Georgia. Plaintiffs had no knowledge of the working conditions and pay at Defendants Corteva and Pioneer's Georgia, Illinois, or Nebraska operations other than the promises Jorge Salinas made.

**B.     Travel**

78.     On or about May 22, 2019, Plaintiffs left their homes in Texas to travel to the location in Georgia where they had been directed to report.

79.     At the direction of Jorge Salinas, Plaintiff Juan Luis Caudillo drove a van provided by Defendants and owned or controlled by Defendants from Texas to Georgia.

80.     Plaintiff Juan Luis Caudillo's time operating this van was not recorded or compensated.

81.     Defendants knew or should have known that they were required to compensate Plaintiff Juan Luis Caudillo for his driving time and out-of-pocket expenses incurred in operating company vehicles.

82.     Plaintiffs K.C., Alexis Alejandro Caudillo, Jose Rolando Caudillo, Angel Adelardo Caudillo, Osmara Yoselyn Caudillo, Maria Elva Caudillo, Francisco Javier Mendoza, Sr., and Roberto Castro were passengers in that van.

83.     Plaintiff Juan Luis Caudillo drove approximately 18 hours from Texas to Georgia from May 22 to May 23, 2019.

84.     Plaintiff Juan Luis Caudillo spent in excess of $150 to pay for gas to fuel Defendants' van during the travel from Texas to Georgia.

85.     The drive from South Texas to Cairo, Georgia, is over 1,000 miles.

86.     Because Defendants did not advance Plaintiffs any money or cover any of their travel expenses from Texas to Georgia, Plaintiffs did not have money for hotels, so they slept in their vehicles at a rest stop.

87.     After a two-day drive across four states, Plaintiffs arrived in Georgia on or about May 23, 2019, and started work the next day.

**C.    Employment**

88.    On the morning of May 24, 2019, Plaintiffs reported to the worksite in Georgia, where they were met by company representatives, given documents to sign, and shown a short training video.

89.    This was the first time that Plaintiffs had been given anything in writing concerning their employment.

90.    These documents were all only in English.

91.    Plaintiffs Carlos Alberto Caudillo, Juan Luis Caudillo, Maria Elva Caudillo, Francisco Javier Mendoza, and Roberto Castro speak and read Spanish and only know a limited amount of English.

92.    These documents, titled "Job Assignment Sheet," identified Jason Prothro, an employee of Defendants Corteva and Pioneer, as Plaintiffs' supervisor.

93.    These documents did not list the number of hours Plaintiffs were promised during recruitment in Texas but instead listed their hours as "variable."

94.    The documents confirmed Plaintiffs would be paid overtime for all hours which each worked above 40 in a workweek.

95.    These documents promised Plaintiffs Carlos Alberto Caudillo and Juan Luis Caudillo $17 per hour.

96.    After Plaintiff Carlos Alberto Caudillo signed his Job Assignment Sheet, and without his knowledge, the Defendants crossed out the portion that stated "$17.00 per hour" and wrote in "$14.00." Defendants, again without Carlos Alberto Caudillo's knowledge, later crossed out "$14.00" and wrote in "$12.00."

97.    After signing the documents, Plaintiffs began pollinating corn.

98.  The free daycare Defendants promised Plaintiff Carlos Alberto Caudillo never materialized, causing several Plaintiffs to miss work to care for his younger children and eventually forcing Plaintiff Carlos Alberto Caudillo to pay out of pocket for childcare.

99.  Despite having promised Plaintiffs at the time of recruitment that there would be significant, high-paying work, Defendants paid Plaintiffs, except for Juan Luis Caudillo, only $12 per hour.

100.  Plaintiff Juan Luis Caudillo was paid $17 per hour straight time and $25.50 per hour for overtime.

101.  Despite promising Plaintiffs at the time of recruitment that they would each be offered 70 hours of work per week, Defendants never provided Plaintiffs anywhere near 70 hours, each, per week of work.

102.  During the pay period from May 20 to May 26, 2019, Defendants recorded and compensated each Plaintiff for 16.75 hours of work.

103.  During the pay period from May 20 to May 26, 2019, Plaintiff Juan Luis Caudillo worked additional unrecorded hours driving Defendants' van from Texas to Georgia.

104.  During the pay period from June 3 to June 9, 2019, Plaintiffs were each offered and worked 22.25 hours of corn pollination work.

105.  During the time Plaintiffs worked for Defendants, many of them were driven to work in the van provided and owned or controlled by Defendants. The van did not have enough seatbelts available for all the passengers.

106.  Neither the promises about the weekly amounts of hours worked nor the promises about the duration of the work season were fulfilled. Despite having promised each Plaintiff

several months of work in three different states, Defendants discharged each Plaintiff without justification after approximately three weeks of work in Georgia.

**D.    Discharge**

107.   Shortly after Plaintiffs began laboring, a crew of H-2A visa workers from Mexico started working alongside Plaintiffs at Defendants Corteva and Pioneer's Pelham, Georgia farm under the supervision of Rodriguez Harvesting, LLC, a farm labor contractor company that was owned by Delfino Rodriguez Jr. These H-2A workers were supervised by Delfino Rodriguez Jr. and others.

108.   On approximately June 6, 2019, Jorge Salinas called Plaintiff Juan Luis Caudillo while Plaintiffs were out grocery shopping and told him that Plaintiffs were fired.

109.   Jorge Salinas did not provide any reason for the firing; Salinas simply said that Plaintiffs should go back to Texas.

110.   Defendants fired Plaintiffs despite their contractual promise to offer Plaintiffs, each, 18 weeks of work.

111.   Defendants fired Plaintiffs without justification or cause.

112.   Plaintiffs returned to Texas.

113.   At Jorge Salinas's direction, Plaintiff Juan Luis Caudillo drove the same van controlled by Defendants back to Texas.

114.   Defendants gave Juan Luis Caudillo only $200 for gas for the return trip.

115.   Plaintiff Juan Luis Caudillo was not compensated for the time he spent driving Defendants' van back to Texas.

116.   Upon arriving in Texas, Plaintiff Juan Luis Caudillo reported to Jorge Salinas by phone to arrange returning the van.

## V.    CAUSES OF ACTION

**A.    First Cause of Action: Migrant and Seasonal Agricultural Worker Protection Act (AWPA)**

117.    Plaintiffs reincorporate and re-allege paragraphs 24-26, 28,32, 39, 41, 45-48, 50-53, 55-82, and 84-116 of this complaint as if fully set forth herein.

118.    This claim is asserted by Plaintiffs Carlos Alberto Caudillo, C.A.C.J., K.C., Alexis Alejandro Caudillo, Cinthia Caudillo Piña, Carla Caudillo, Juan Luis Caudillo, Jose Rolando Caudillo, Angel Adelardo Caudillo, Osmara Yoselyn Caudillo, Maria Elva Caudillo, Francisco J. Mendoza Sr., and Roberto Castro against all Defendants.

119.    At the time of Plaintiffs' recruitment, Defendants failed to disclose in writing all the terms and conditions of Plaintiffs' employment as required by 29 U.S.C. § 1821(a).

120.    Defendants failed to make, keep, and preserve adequate payroll records for Juan Luis Caudillo by failing to record all compensable work in violation of 29 U.S.C. § 1821(d)(1).

121.    Defendants failed to provide hours and earnings records to Plaintiffs Alexis Alejandro Caudillo, C.A.C.J., K.C., Carla Caudillo, Jose Rolando Caudillo, Angel Adelardo Caudillo, and Osmara Yoselyn Caudillo with all the information required by the AWPA in violation of 29 U.S.C. § 1821(d)(2).

122.    At the time of Plaintiffs' recruitment, Defendants provided false and misleading information about the amount of work, availability of benefits, cost of transportation, and the amount of compensation in violation of 29 U.S.C. § 1821(f) by making promises orally that Defendants knew to be false and misleading.

123. In violation of 29 U.S.C. § 1821 (g), Defendants failed to provide Juan Luis Caudillo, Carlos Alberto Caudillo, Maria Elva Caudillo, Roberto Castro, and Francisco J. Mendoza Sr. with disclosures in Spanish.

124. In violation of 29 U.S.C. § 1822(c), Defendants violated the working arrangement when they failed to offer Plaintiffs 70 hours of work in each workweek and when they fired them without justification prior to the end of the promised work period.

125. In violation of 29 U.S.C. § 1841(1)(A), Defendants failed to ensure that the van they provided, and in which Plaintiffs C.A.C.J., K.C., Alexis Alejandro Caudillo, Jose Rolando Caudillo, Angel Adelardo Caudillo, Osmara Yoselyn Caudillo, Maria Elva Caudillo, Cinthia Pina Caudillo, Carla Caudillo, Francisco J. Mendoza Sr., and Roberto Castro were transported, conformed to the required standards under the AWPA, in that it did not have enough seatbelts for all passengers.

126. Each of the above failures caused Plaintiffs harm by either: (a) inducing them to migrate, incurring their own expenses and forgo other job opportunities in reliance on the promises that they would each be given 70 hours of work per week and 18 weeks of work; (b) causing them to lose potential earnings by not providing the promised amount of work; and (c) causing Plaintiffs to risk physical injury by riding in an unsafe work vehicle.

127. Each of the above failures constituted a separate violation of the AWPA and warrants a separate award of damages.

128. Each Plaintiff is entitled to either statutory damages, actual damages, or other equitable relief for each AWPA violation.

129.   Plaintiffs unsuccessfully attempted to resolve these issues with Defendants before resorting to litigation.

**B.     Second Cause of Action: Fair Labor Standards Act**

130.   This claim is asserted by Plaintiff Juan Luis Caudillo against All Defendants.

131.   Plaintiff Juan Luis Caudillo reincorporates and re-alleges paragraphs 30, 32, 40-42, 49-53 79, 83-100, 102-104, and 113-115 of this complaint as if fully set forth herein.

132.   Defendants each "employed" Plaintiff Juan Luis Caudillo within the meaning of the FLSA because they suffered or permitted him to work. *See* 29 U.S.C. § 203(d).

133.   Defendants failed to record and compensate Plaintiff Juan Luis Caudillo for all compensable time, including time operating the van at Defendants' direction.

134.   Defendants also failed to reimburse Plaintiff Juan Luis Caudillo for costs incurred for Defendants' benefit in operating the van, including costs he incurred in fueling the van. The cost of gas to transport the van was primarily for Defendants' benefit.

135.   Juan Luis Caudillo was not paid for the time he spent operating the van at Defendants' direction.

136.   Because of the unreimbursed expenses incurred for Defendants' benefit and this uncompensated time, Plaintiff Juan Luis Caudillo was not paid free and clear an average of the federal minimum wage of $7.25 per hour for all hours he worked.

137.   Defendants' violations of the FLSA were willful because they knew or showed reckless disregard for the fact that their failure to pay Juan Luis Caudillo the effective minimum wage for all hours worked violated the FLSA.

138.   Juan Luis Caudillo is entitled to actual damages, liquidated damages, and reasonable attorney's fees for this violation.

**C.      Third Cause of Action: Breach of Contract**

139.   Plaintiffs reincorporate and re-allege paragraphs 55-74, 98-102, 104, 106, and 108-114 of this complaint as if fully set forth herein.

140.   Plaintiffs Carlos Alberto Caudillo, C.A.C.J., K.C., Alexis Alejandro Caudillo, Cinthia Caudillo Piña, Carla Caudillo, Juan Luis Caudillo, Jose Rolando Caudillo, Angel Adelardo Caudillo, Osmara Yoselyn Caudillo, Maria Elva Caudillo, Francisco J. Mendoza Sr., and Roberto Castro assert this claim against all Defendants.

141.   Defendants entered into a contract for employment with Plaintiffs.

142.   Defendants and Plaintiffs made mutual promises that constituted valuable consideration to bind each respectively.

143.   Defendants promised, as further alleged above, a specific amount of work, including a minimum number of hours of work for each per week and a period of employment for each with a specific duration in Georgia, Illinois, and Nebraska.

144.   Plaintiffs promised to migrate from their homes in Texas to Georgia and make themselves available for and then perform the work that Defendants offered.

145.   These mutual promises created an enforceable contract.

146.   In the alternative, Plaintiffs accepted Defendants' offer by traveling from Texas to Georgia to work for Defendants.

147.   In the alternative, the contract became enforceable when Plaintiffs started working for Defendants, as this constituted beginning performance of Plaintiffs' obligations under the contract.

148.   Defendants breached this contract by failing to offer Plaintiffs the number of weeks of work promised.

149. Defendants breached this contract by failing to provide Plaintiffs the number of hours promised in any week in which Defendants offered Plaintiffs work, and Defendants fired Plaintiffs without cause.

150. Each of these failures constituted a breach of Plaintiffs' contracts.

151. Each of these failures resulted in damages to Plaintiffs.

**D.     Fourth Cause of Action: Promissory Estoppel**

152. Plaintiffs reincorporate and re-allege paragraphs 55-74, 98-102, 104, 106, and 108-114 of this complaint as if fully set forth herein.

153. Plaintiffs Carlos Alberto Caudillo, C.A.C.J., K.C., Alexis Alejandro Caudillo, Cinthia Caudillo Piña, Carla Caudillo, Juan Luis Caudillo, Jose Rolando Caudillo, Angel Adelardo Caudillo, Osmara Yoselyn Caudillo, Maria Elva Caudillo, Francisco J. Mendoza Sr., and Roberto Castro assert this claim against all Defendants.

154. Defendants promised Plaintiffs a specific amount of work, including a minimum number of hours of work per week and a period of employment with a specific duration in Georgia, Illinois, and Nebraska.

155. As experienced agricultural employers familiar with the disclosure requirements under the AWPA, Defendants expected or should have expected Plaintiffs would rely on Defendants' promises.

156. Plaintiffs reasonably relied on Defendants' promises to their detriment.

157. In reliance on Defendants' promises, Plaintiffs expended money, time, and effort and forewent other job opportunities and traveled to Georgia to Plaintiffs' detriment.

158. Injustice can only be avoided by enforcing Defendants' promises.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

    a.   enter a declaratory judgment that Defendants violated Plaintiffs' rights under the AWPA;

    b.   for each AWPA violation by Defendants, award each Plaintiff statutory damages of $500 per violation, or actual damages for each violation where such damages exceed $500, pursuant to 29 U.S.C. § 1854(c)(1);

    c.   enter a declaratory judgment that Defendants violated the rights of Juan Luis Caudillo under the FLSA;

    d.   for Defendants' violations of the FLSA, award Juan Luis Caudillo his actual and liquidated damages;

    e.   award Juan Luis Caudillo his reasonable attorney's fees pursuant to the FLSA;

    f.   enter a declaratory judgment that Defendants breached their employment contract with Plaintiffs;

    g.   for Defendants' breach of the employment contract, award Plaintiffs their consequential and expectancy damages in an amount to be determined by a jury;

    h.   alternatively, if the Court finds no actual damages, award nominal damages pursuant to Ga. Code Ann. § 13-6-6 to cover the cost of bringing this action;

    i.   alternatively, if the Court finds there was no enforceable contract, to prevent injustice, grant relief in equity in the form of Plaintiffs' damages for reasonably relying to their detriment on Defendants' promises;

    j.   award Plaintiffs their costs and reasonable attorney's fees as allowed by law; and

    k.   award Plaintiffs all other relief to which they may be entitled in law or equity.

Respectfully,

***/s/ Dawson Morton***
Dawson Morton
Georgia Bar No. 525985
Dawson Morton, LLC
104 Cambridge Ave
Decatur GA 30030
Phone: (404) 590-1295
dawson@dawsonmorton.com

***/s/ William J. Grigg***
William J. Grigg
Pending admission pro hac vice
TEXAS RIOGRANDE LEGAL AID, INC.
Texas Bar No. 24097769
1206 E Van Buren St.
Brownsville, TX 78520
Telephone: (210) 212-3700
Fax: (210) 229-9328
Email: wgrigg@trla.org

***/s/ E. Sidonia Mitchell***
E. Sidonia Mitchell
Pending admission pro hac vice
TEXAS RIOGRANDE LEGAL AID, INC.
Texas Bar No. 24125331
301 S. Texas Ave.
Mercedes, TX 78570
Telephone: (956) 447-4800
Fax: (956) 825-7035
Email: smitchell@trla.org